IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RICKY A. DICKENS,

          Plaintiff,

v.                               CIVIL ACTION NO. 2:10-cv-00088

AETNA LIFE INSURANCE COMPANY,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the parties' cross-motions for summary judgment [Docket 24, 26]. For the reasons set forth below, the Court **DENIES** Defendant Aetna Life Insurance Company's Motion for Summary Judgment [Docket 24], **GRANTS** Plaintiff Ricky A. Dickens's Motion for Summary Judgment [Docket 26] to the extent it seeks remand to the plan administrator, and **REMANDS** the case to Aetna for further consideration consistent with this opinion.

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The facts in this case are undisputed. Plaintiff Ricky A. Dickens (Plaintiff) worked as a senior territory business manager for Bristol-Meyers Squibb Company (BMS), traveling and marketing drugs to doctors and hospitals. (Docket 25 at 2.) Plaintiff was hired by BMS in 2002 and suffered clinical depression, anxiety, insomnia, and suicidal ideations in early 2004. (Docket 1-1 at 3.) Dickens participated in the long term disability (LTD) Plan offered by BMS, which is administered by Defendant Aetna Life Insurance Company (Aetna). In July 2004, based on his medical condition, Plaintiff applied for and received LTD benefits under the plan. He was

considered disabled under the LTD Plan's definition at that time, and he continued to receive benefits until August 2008. In August 2008, Aetna terminated Plaintiff's benefits, reportedly based on medical evidence that he no longer suffered from a debilitating injury or illness. (*Id.* at 5-6.) Plaintiff appealed several times, but Aetna ultimately denied benefits. On October 23, 2009, Plaintiff filed a civil action in the Circuit Court of Fayette County, West Virginia, seeking restoration of his LTD Plan benefits and an injunction preventing Aetna from discontinuing his benefits in the future. (Docket 1-1 at 7-9.) Aetna removed the suit to this Court on January 28, 2010, based on federal question jurisdiction pursuant to the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA).

## II. STANDARD OF REVIEW

*A. Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958

(4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 323. Even undisputed facts may give rise to multiple inferences, however, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

*B. Review of ERISA Plan Administrator's Decision*

The Court reviews an ERISA plan administrator's decision to deny benefits under an abuse of discretion standard if the plan in question confers discretionary authority on the administrator in the exercise of its power. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). Under this standard, a discretionary decision "will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). In determining whether the decision was reasonable, the Court considers eight factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the

>   decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342-43; *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008).

### III. ANALYSIS

A primary argument put forth by Plaintiff concerns his social security disability benefits. The Social Security Administration (SSA) continues to consider Plaintiff disabled under relevant law. (Docket 16-1 at 65-68.) The definition of disability under the LTD Plan, argues Plaintiff, is similar to the corresponding definition used by the SSA in making its disability determinations. (Docket 30 at 4-5.) Accordingly, Plaintiff continues, in making a disability determination under the LTD Plan, Aetna must give significant weight to the SSA's disability determination. (*Id.*) Aetna apparently concedes that, "[i]n this jurisdiction, the SSA award would . . . be entitled to significant weight if the disability definitions of the SSA and the Plan are [found to be] similar." (Docket 29 at 15.) Aetna contends, however, that as a matter of law, the two definitions are "quite different." (*Id.* at 16.) Furthermore, states Aetna, the SSA determination was reviewed and discussed in a letter upholding the denial of Plaintiff's benefits. The social security disability award was additionally referenced in each letter related to the denial of Plaintiff's benefits. (*Id.*)

Social security disability awards are not binding on ERISA plan administrators. *See, e.g.*, *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999). However, SSA determinations are not worthless, either. The weight to be afforded SSA determinations depends on the similarity between the SSA definition of "disability" and the ERISA plan's definition of "disability." *Elliott,* 190 F.3d at 607 ("[C]onsideration . . . of the SSA's finding should depend, in part, on the presentation of some

evidence that the 'disability' definitions of the agency and Plan are similar."). On the one hand, "barring proof that the disability standards for social security and the plan in question are analogous, [courts should] not consider an SSA award in an ERISA case." *Piepenhagen v. Old Dominion Freight Line, Inc. Employee Benefit Plan*, 395 F. App'x 950, 957-58 (4th Cir. 2010) (unpublished); *see also Whitten v. Hartford Life Gp. Ins. Co.*, 247 F. App'x 426, (4th Cir. 2007) (unpublished) (upholding district court's decision that SSA's disability determination should be "discounted . . . due to the differing definitions of disability used by SSA and the Plan."). On the other hand, when the definitions of "disability" are sufficiently similar, a plan administrator's failure to consider the SSA award in making the ERISA plan decision is an abuse of discretion. *See Crouch v. Siemens Short-Term Disability Plan*, 662 F. Supp. 2d 553, 561 (S.D. W. Va. 2009) (administrator's failure to consider SSA award, where disability definitions similar, constituted an abuse of discretion warranting remand). At least one court in the Fourth Circuit has held that, where the definitions are similar, the plan administrator must afford the SSA decision "significant weight." *See Hines v. Unum Life Ins. Co. of Am.*, 110 F. Supp. 2d 458, 468 (W.D. Va. 2000) (plan administrator "should have given the [SSA's] findings significant weight."); *see also Elliott*, 190 F.3d at 607 (plan administrator required to consider SSA award if the ERISA plan "mirrors the relevant definition under the regulations of the SSA"). Notably, from its memorandum on the issue, Aetna agrees that an SSA determination is entitled to "significant weight" if the disability definitions are sufficiently analogous. (Docket 29 at 16.)

A. *The Disability Definitions are Similar*

The LTD Plan administered by Aetna contains a disability definition that is analogous to the SSA's relevant definition. The LTD Plan considers an individual "totally disabled," and thus

eligible for LTD benefits "if, as a result of illness or injury, [the claimant] cannot perform the essential functions of any job for which [he is] reasonably qualified because of [his] education, training, or experience." (Docket 5-1 at 9.) For purposes of the SSA, an individual is "disabled" "if he has . . . a severe impairment(s) that makes [him] unable to do [his] past relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 404.1505(a). There exist three elements in both definitions: (1) a causal component—that impairment, illness, or injury caused the job loss at issue; (2) an impairment component—that the claimant cannot perform the essential functions of or work relevant to the contemplated job or jobs; and (3) a scope component—that the claimant cannot perform any job for which he is qualified or any other gainful work. The definitions are significantly similar in all three respects, diverging only as to the third element. There, the SSA definition restricts the category of eligible individuals, considering an individual disabled only if he cannot perform "any . . . substantial gainful work that exists in the national economy." In contrast, the LTD Plan definition permits benefits for any claimant who is precluded from performing "any job for which [he is] reasonably qualified" based on past education and experience. In short, the LTD Plan considers an individual disabled if he cannot perform a job for which he is reasonably qualified, even if the claimant *can* perform some substantial gainful work, and therefore would not be considered disabled under the SSA definition. Thus, the only meaningful difference between the two definitions amounts to the LTD Plan encompassing a broader swath of limitation (including less severe limitations), such that it is more difficult to show disability under the SSA's definition. Accordingly, the Court **FINDS** the two definitions similar (and the SSA definition more restrictive) such that the SSA determination was entitled to substantial weight.


...

*B. Aetna Failed to Meaningfully Weigh the SSA Award*

In order to observe principled and fair procedures, Aetna was required to meaningfully weigh Plaintiff's social security disability benefit award before making its disability determination under the LTD Plan. Not only did Aetna fail to afford the SSA determination substantial weight, it ostensibly neglected to weigh the decision at all, instead briefly mentioning the SSA determination in a single letter upholding the denial of Plaintiff's LTD Plan benefits. That letter stated, in relevant part:

> We also reviewed documentation from the Social Security Administration dated 9/20/04, which advised of your monthly disability benefit, and correspondence dated 6/11/07, which indicated continuation of those benefits. However, in order to be eligible for continued benefits under your LTD plan, we must conclude that you were unable to perform the essential functions of any job for which you are reasonable [sic] qualified because of your education, training or experience, effective 9/1/08.

(Docket 16-1 at 50.) Aetna additionally states that it "referenced in each and every letter relating to the claim denial" the SSA determination supplied by Plaintiff. (Docket 29 at 16.) However, the above excerpt and Aetna's assertion that it acknowledged the existence of Plaintiff's SSA disability award frequently fail to give the SSA determination any weight at all. Like the administrator in *Hines v. Unum Life Insurance Company*, Aetna simply "provide[d] lip service to the findings" of the ALJ, which falls far short of the substantial weight to be properly paid the SSA determination. *See* 110 F. Supp. 2d at 468.

*C. Aetna Required Plaintiff to Seek Disability Benefits*

Aetna's error regarding the SSA determination is severely compounded when juxtaposed with the fact that Aetna required Plaintiff to initially apply for and fully appeal any denial of social security disability benefits. Several courts of appeals have held that, although there is no technical requirement to expressly distinguish a favorable Social Security determination in every ERISA case,

7

> [i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of finding that the decision was arbitrary and capricious.

*E.g.*, *Bennett v. Kemper Nat'l Servs.*, 514 F.3d 547, 554 (6th Cir. 2008); *see also Holstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 772 (7th Cir. 2010) (holding that cursory review of SSA award where plan administrator required SSA application suggests arbitrary decision making, especially when the SSA determination was made under a more stringent "disability" standard). In this case, Aetna did not encourage Plaintiff to apply for social security disability benefits, it *required* all claimants to seek a disability award from the SSA as a prerequisite to eligibility under the LTD Plan. The plan expressly states that claimants "must apply for them [SSA disability benefits]. As a result, the company may ask for proof that you applied for Social Security disability benefits and appealed any denied application." (Docket 5-1 at 11.) In addition, Aetna offsets LTD Plan benefits paid to eligible claimants by the initial disability benefit they receive, stating: "Your LTD Plan benefits will be reduced or offset by any amounts . . . for which you are eligible from statutory disability . . . ." (*Id.*) Aetna retroactively imposed the offset provision on Plaintiff when he became eligible for disability benefits under the SSA. (Docket 16-1 at 4.) Finally, although Aetna references Plaintiff's SSA determination in a letter upholding the denial of his LTD Plan benefits, there is no attempt to justify the contrast between the LTD Plan benefit decision and the SSA's decision. (Docket 16-1 at 50.) As other courts have noted, "proper administrative process will meaningfully discuss a claimant's award of social security benefits . . . [including] analyzing the distinctions between the basis for the two awards." *Salz v. Standard Ins. Co.*, 380 F. App'x 723, 724 (9th Cir. 2010)

(unpublished) (citing *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009)).

Aetna utterly failed to justify its denial of Plaintiff's LTD Plan benefits in light of his continued SSA benefit. Given the Court's holdings on the scope of the respective definitions, it is unclear that Aetna can rationally distinguish the two disability determinations, and the cursory treatment of the SSA award may be Aetna's attempt to side-step that dilemma. In any case, Aetna was required to give the SSA determination "substantial weight," and it instead failed to weigh the disability benefit determination at all. Aetna's cursory treatment of the SSA decision suggests an unfair decision-making process, where it seems the LTD Plan administrator is merely going through the motions rather than appropriately considering the relevant evidence. The fact that Aetna mandated Plaintiff's application for SSA disability benefits and then financially benefitted from the award of those benefits only serves to bring the fundamental unfairness of Aetna's actions into sharper relief. Merely acknowledging the existence of an SSA disability award will not suffice under the circumstances of this case. In terms of the *Booth* factors, and especially the first (language of the plan), second (purposes and goals of the plan), third (adequacy of materials considered), fourth (consistent interpretation of plan provisions), and fifth (reasoned and principled decision-making process) of those factors, the Court **FINDS** Aetna's treatment of the SSA disability award arbitrary and unreasonable, such that the decision below is fatally flawed. As the Fourth Circuit has stated, "[r]emand is most appropriate 'where the plan itself commits the [administrator] to consider relevant information which [it] failed to consider.'" *Elliott*, 190 F.3d at 609 (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1008 (4th Cir. 1985)). The LTD Plan, by requiring application for SSA disability benefits and profiting from the award of those benefits, and additionally adopting a

disability definition significantly similar to the SSA's definition, committed itself to providing a reasoned explanation before denying LTD Plan benefits over continued SSA benefits. As stated previously, Aetna failed to consider Plaintiff's SSA award in any meaningful way, instead listing it among scores of other documents received and reviewed.

## IV. ATTORNEY'S FEES

Plaintiff seeks attorneys' fees to date should the Court order remand to the LTD Plan administrator. (Docket 27 at 13.) The Supreme Court recently revisited and revised the standard for awarding attorney's fees in ERISA cases. In *Hardt v. Reliance Standard Life Insurance Co.*, the Court held that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees" under ERISA. 130 S. Ct. 2149, 2158 (2010). The Court continued to state that "[a] claimant does not satisfy that requirement by achieving 'trivial success on the merits' or a 'purely procedural victor[y].'" *Id.* (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983)). Relying on the district court's finding that there was "compelling evidence that [the claimant] is totally disabled" and its statement that it was "inclined to rule in [the claimant's] favor," the Supreme Court determined that the ERISA claimant in *Hardt* had shown some degree of success on the merits and attorney's fees were thus appropriate. *Id.*

In contrast to *Hardt*, the Court today expresses no opinion as to whether Plaintiff is disabled under the LTD Plan's definition. Instead, the remand in this case represents a purely procedural victory for Plaintiff, and attorney's fees are not warranted at this time.

## V. CONCLUSION

Having concluded that Aetna abused its discretion in failing to address the evidence relating to Plaintiff's award of disability benefits by the SSA, the Court hereby **DENIES** Defendant's motion

for summary judgment [Docket 24] and **GRANTS** Plaintiff's motion for summary judgment [Docket 26] to the extent it seeks remand to the plan administrator for reconsideration.

    **IT IS SO ORDERED**.

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTER:    March 28, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE